RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  12/28/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEVIN JONES, | CIVIL ACTION |
| Plaintiff | SECTION "P" |
| | NO. 1:11-CV-02150 |
| VERSUS | |
| | |
| CATAHOULA CORRECTIONAL | JUDGE DEE D. DRELL |
| CENTER WARDEN PAT BOOK, et al., | MAGISTRATE JUDGE JAMES D. KIRK |
| Defendants | |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a verified civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by Kevin Jones ("Jones") on December 14, 2011 (Doc. 1). The named defendants are Pat Book (warden of the Catahoula Correctional Center ("CCC")), Missy Cowart (an LPN employed at the CCC), and Bennie Ramsey (assistant warden of CCC). Jones alleges that, while he was confined in the CCC, he was denied medical care which resulted in emergency surgery and the permanent use of a colostomy bag (Doc. 1). For relief, Jones asks for monetary damages, including punitive damages. Jones is presently confined in the Winn Correctional Center in Winnfield, Louisiana.

Cowart was never served; apparently, she left her employment at CCC in December 2011 and did not leave a forwarding address (Doc. 10). Accordingly, it will be recommended that the complaint against Cowart be dismissed without prejudice under Fed.R.Civ.P.

4(m).  See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Defendants Book and Ramsey answered the complaint (Doc. 12) and filed a motion for summary judgment with supporting documentary evidence (Doc. 18). Jones filed a response in opposition to defendants' motion (Doc. 22), to which the defendants filed a reply (Doc. 23) and a motion to strike (Doc. 25). Jones then filed an opposition to defendants' motion to strike (Doc. 27).

Defendants' motion for summary judgment is now before the court for disposition.

## Law and Analysis

### Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court will grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>Law and Analysis</u>

Jones alleges in his verified complaint (Doc. 1) and affidavit/statement of material facts (Docs. 22, 22-1, 22-2) that, on January 2011, he was transferred from the St. Charles Parish Prison to the Catahoula Correctional Center with his medical records. Jones alleges that he had a bad hemorrhoid problem at that time, but no infection. Jones alleges that Cowart was supposed to order medication but never did so (Docs. 1, 22, 22-1, 22-2). When Jones filled out a sick call request, telling Cowart he needed to go to the hospital, Cowart gave Jones a pain pill without examining him and returned him to his dorm (Docs. 1, 22, 22-1, 22-2). Jones contends his hemorrhoid became so badly infected that the pain so severe that he could not sleep or walk, and the officers had to take his food to him (Docs. 1, 22, 22-1, 22-2). After a week, the prison officials sent Jones to Huey P. Long Hospital; after the doctor examined Jones, he asked the officers why it had taken so long for them to take Jones to the hospital because he would have died in a few more days (Doc. 1). Jones was taken immediately to emergency surgery, and now has to wear a colostomy bag (Docs. 1, 22, 22-1, 22-2). Jones contends that the policy of Warden Book and Assistant Warden Ramsey is to

not take an inmate to the hospital until it is almost too late, and that policy led to Jones' current irreversible condition (Docs. 1, 22, 22-1, 22-2).

### 1. Eighth Amendment

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), citing Trop v. Dulles, 356 U.S. 86, 100 (1958). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate

indifference to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. at 737-738, 122 S.Ct. at 2514-2515, and cases cited therein.

Louisiana prison authorities owe a duty to provide inmates with reasonable medical care. Corley v. Prator, 290 Fed.Appx. 749, 753 (5th Cir. 2008); Harper v. Goodwin, 41,053-CA (La.App. 2d Cir. 5/17/06), 930 So.2d 1160, 1163; La.R.S. 15:831.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness" or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994). A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is also deliberately indifferent to serious medical needs of prisoners if he intentionally denies or

delays access to medical care. <u>Walker v. Butler</u>, 967 F.2d 176, 178 (5th Cir. 1992); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997), citing <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. at 292. Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference. <u>Norton</u>, 122 F.3d at 291, citing <u>Farmer</u>, 511 U.S. at 838-40, 114 S.Ct. at 1980.

The "seriousness" of an inmate's medical need may be decided by reference to the effect of delay in treatment. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. <u>Hill</u>, 40 F.3d at 1187-89.

    2. Defendants' Summary Judgment Evidence

It is noted that defendants' affidavits are nearly identical

to one another and to defendants' statement of undisputed facts and brief. Defendants' affidavits are not the type of individualized statements setting forth personal knowledge of the facts that are contemplated by Fed.R.Civ.P. rule 56 and this court for affidavits, and are generally inadequate to support a motion for summary judgment.

### 3. CCC Policy for Medical Care

Defendants contend in their statement of undisputed facts and affidavits that:

> "It is the policy of Ramsey and Book that inmates detained at the CCC be provided adequate and proper medical care and neither had any knowledge of a policy or custom to provide inadequate or improper medical care to inmates."
>
> "Both Book and Ramsey had knowledge that there is a functioning and meaningful system for dealing with complaints lodged by inmates concerning their medical care and any conditions of confinement."

These statements allege only legal conclusions which are to be made by the trier of fact. Defendants failed to allege or show the specific policies or customs in place at CCC which would support their motion for summary judgment.

Jones states in his verified petition (Doc. 1) and affidavit/statement of material facts (Doc. 22) that he had a serious medical emergency, a statement which he contends is supported by the emergency room doctor's verbal statements to him and the guards who accompanied him to the hospital.

Defendants contend in their statement of undisputed facts,

8

brief and affidavits (Doc. 18):

> "In the event an inmate did make a verbal complaint regarding medical care, it is Book and Ramsey's policy to advise the inmate to fill out a request for medical care form or to fill out a grievance form, or, depending upon the circumstances, both forms."

Although defendants allege they customarily require a written request for medical care, they have not shown what policies are in place to aid inmates having a medical emergency, such as a compound fracture, a heart attack, or, as in this case, an unknown medical problem that prevents the inmate from being able to walk. Jones alleges he was unable to walk and that one of the prison officers was having his meals brought to him in his cell. Moreover,

> Defendants further contend:
>
> "Neither Ramsey nor Book had any knowledge of any medical problem or medical complaint made by Jones, concerning his medical care and treatment at the CCC. Neither Ramsey nor Book saw any written complaint, grievance, or other written document from Jones concerning complaints of inadequate or improper medical care or any condition of confinement while Jones was incarcerated at the CCC. Neither Ramsey nor Book had knowledge of any verbal complaint or verbal request for medical care being made by Jones."

However, Jones states in his verified complaint that he personally informed both Ramsey and Book that he had a medical emergency. Therefore, there is a genuine issue of material fact as to whether defendants had actual knowledge that Jones had a medical problem.

Moreover, although defendants contend Jones was afforded medical care the next day, they have not shown that Jones was immediately taken to the infirmary for evaluation of an apparently

9

obvious medical problem (Jones alleges he was unable to walk), nor have they rebutted Jones' allegation that the emergency room doctor asked the prison officers why they had waited so long to take Jones in for medical care, his statement that he was immediately given emergency surgery, or his allegation that, but for the delay in providing him medical care, he would not be required to use a colostomy bag for the rest of his life. Jones alleges that defendants were deliberately indifferent to his complaints of pain.

It is noted that defendants have failed to provide this court with a copy of Jones' medical records from CCC and from Huey P. Long Hospital in support of their motion for summary judgment.

Finally, defendants state,

> "Neither Book nor Ramsey are trained or qualified to evaluate an inmate medical condition. Both rely upon evaluation performed by the nurse employed at the CCC and/or any healthcare provider to whom an inmate may be transported for care and treatment concerning the necessity for and/or scope of any medical care or treatment."

This statement is disingenuous. The wardens are not expected to be medical experts, but they are obligated to provide adequate medical care in a timely manner to the inmates in their charge. Adequate medical care includes providing a medical professional (either within or outside the prison) who can diagnose and care for inmates' medical problems. Defendants have not alleged what policies are in place to ensure that their obligation to provide the inmates in their charge with adequate medical care is met.

Defendants' repeated statement, that they do not play any role in the medical care provided at CCC, are simply erroneous.

Defendants also appear to argue that, if Jones was denied medical care, it was done by Nurse Misty Cowart, and not by them. The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443 (1993); Thompkins, 828 F.2d at 303. Although defendants would not have any vicarious liability for Cowart's acts or omissions, Jones alleges they are directly liable because of an unconstitutional policy or custom to unnecessarily delay sending inmates for outside medical care, and because they ignored his direct verbal request to them for emergency medical care.

Finally, defendants contend in their statement of undisputed facts that Jones was sent to the doctor the day after he asked for medical care. However, Jones alleges in his verified complaint

11

that defendants did not provide medical care (medication as well as outside medical care) quickly enough for his particular medical condition (an infected hemmorrhoid), resulting in deterioration of his condition to the point that Jones required emergency surgery and now has to wear a colostomy bag permanently.

There is a genuine issue of material fact as to whether defendants were deliberately indifferent to Jones' serious medical needs that resulted in an inappropriate delay in providing him medical care.

4. Identification of the Defendants and Actual Knowledge

Defendants submitted Jones' affidavit, taken on July 30, 2012, to show that Jones did not know who Warden Book or Assistant Warden Ramsey were; defendants contend Jones does not actually know whether he told them or someone else that he needed medical care (Doc. 24, pp. 8-9/17). Defendants state in their statement of undisputed facts that Jones did not tell them he needed medical care, and if he had, they would simply have told Jones to fill out a medical care request form (Doc. 18).

However, Jones states in his deposition that, while he knew Book and Ramsey were the warden and assistant warden (and he described them) because they visited the dorms together every morning, he was not sure which was which (Doc. 24, pp. 8-9/17). Jones further explained in his deposition that other inmates later told him which of them was Warden Book and which was Assistant

Warden Ramsey (Doc. 24, pp. 8-9/17). Jones stated in his deposition, complaint, and affidavit that, when Warden Book and Assistant Warden Ramsey made their morning round in his dorm, he told them, in person, that he needed medical care, he was hurting, and he could not walk, and the other inmates also told the defendants that Jones needed medical care (Doc. 1; Doc. 22, 22-1, 22-2; Doc. 24, pp. 8-9/17). Jones contends the nurse, Misty Cowart, never ordered his medication and never examined him, and he was sent to the hospital for medical care the day after he told the defendants/wardens he needed medical care (Doc. 24, p. 9/17).

Again, there are genuine issues of material fact, as to whether Jones told the defendants that he needed medical care, which preclude a summary judgment.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 18) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of December 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE